**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WHITE COAT WASTE PROJECT ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-1155 (EGS) |
| ) | |
| THE UNITED STATES DEPARTMENT ) | |
| OF VETERANS AFFAIRS ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiff White Coat Waste Project ("Plaintiff") commenced this action on June 14, 2017, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006).  Plaintiff sought records from Defendant U.S. Department of Veterans Affairs ("VA" or "Defendant"), and made the following Freedom of Information Act request from the Richmond, Virginia Veterans Affairs Medical Center ("Richmond VAMC"):

> "A current census of all dogs actively held and used in the McGuire VAMC laboratories (including each animal's ID number, breed, name, color and distinctive markings, date of birth, source, USDA pain category, and assigned protocol). Such records must be maintained and made available to the public per 9 CFR §2.35 (Recordkeeping requirements of the Animal Welfare Act)"
>
> "Photographs and videos of these dogs"
>
> "Active Institutional Animal Care and Use Committee (IACUC)-approved protocols to which these dogs are assigned"

(*See* Complaint ("Compl.") generally; Declaration of Emily Fuemmeler ("Fuemmeler Decl.") ¶ 5, attached hereto).

As set forth below, Defendant should be granted summary judgment as Defendant released all responsive material that Plaintiff is entitled to receive. Therefore, pursuant to Federal Rule of Civil Procedure 56, no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background is fully set forth in Defendant's Statement of Material Facts and declarations (filed contemporaneously with that motion), and are incorporated herein.

## III.  STANDARD OF REVIEW

### A. General Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d. 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Summary Judgment Standard as Applied to FOIA Cases

In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.

*Weisberg v. Dep't of Justice*, 627 F.2d 365, at 371 n.54 (D.C. Cir. 1980) (quotation omitted). Additionally, a plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Justice*, 742 F. Supp. 2d. 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citations omitted)). *See also Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing *Miscavige v. IRS*, 2 F.3d. 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment (and therefore the requester or plaintiff is not entitled to judgment) once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d. 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d. 365, 368 (D.C. Cir. 1980).

Thus, an agency defeats a cross-motion for summary judgment by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d. 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v.U.S. Dep't of Army*, 611 F.2d. 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d. 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d. 724, 738 (D.C. Cir. 1981)). *See also Public Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d. 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d. 634 (D.C. Cir. 2002).

## IV.   ARGUMENT

### 1.   Duty to Conduct an Adequate, Reasonable Search

Upon receipt of a FOIA request, agencies must conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of a search is, however, "dependent upon the circumstances of the case," *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990), and is measured by "the reasonableness of the [agency's] effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Therefore, an agency must simply make "a good faith effort to conduct a search for the requested records using methods which can reasonably be expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Although the search must be focused on identifying responsive records in the locations where they could be expected to exist, *see Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), an agency need not search any further than the reasonable scope of the request. *Voinche v. FBI*, No. 96-5304, 1997 WL 411685, at *1 (D.C. Cir. 1997). To demonstrate the adequacy of its search, the agency must provide the court with "affidavits of responsible agency officials which are relatively detailed, nonconclusory, and submitted in good faith." *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 12–13 (D.D.C. 1998). If the affidavits' description of the search establishes that the agency conducted an adequate search, then summary judgment is appropriate. *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994); *see also, e.g.*, *Oglesby*, 920 F.2d at 68; *Weisberg*, 705 F.2d at 1351. Furthermore, it is well established that these declarations are "accorded a presumption of good faith, which

cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Here, the request was for the current census of all dogs actively held and used in the McGuire VAMC laboratories pursuant to 9 CFR §2.35 (Recordkeeping requirements of the Animal Welfare Act) and the Active Institutional Animal Care and Use Committee (IACUC). (Declaration of William Maragos (Maragos Decl. ¶ 6).

Veterinary Medical Unit ("VMU") is the most likely place that responsive material would be found because VMA, inconjunction with the Active Institutional Animal Care and Use Committee ("IACUC") controls, stores, and can access all acquisition records regarding all active and approved animal protocols to which the dogs are assigned that arereferenced in Plaintiff's request. (Maragos Decl. ¶¶ 5, 7-10). Therefore, unless the Plaintiff can identify "evidence sufficient to put the Agency's good faith into doubt," summary judgment should be granted in favor of Defendant VA. *Ground Saucer Watch*, 692 F.3d at 771.

2. **VA Properly Withheld Information Under Applicable FOIA Exemptions**

Upon completion of the search and review by VA staff, it determined that regarding Item No. 1, in Plaintiff's FOIA request, which was the current census, VA withheld the name and address of the truck driver, and the name, signature, and title of the individual, who received the shipment, pursuant to FOIA Exemption (b)(6), but all other information contained within census was released.

Regarding Item No. 3, in Plaintiff's FOIA request, VA withheld the principal investigators' names as well as other research personnel names, pursuant to FOIA Exemptions (b)(5), (b)(6) and (b)(7)(f). VA released protocol titles, funding sources; and the names of the companies providing

devices, with the exception of the protocol title contained in ACORP #02235. This protocol title was withheld under FOIA Exemption (b)(3). (Declaration of Emily Fuemmeler ("Fuemmeler Decl.") ¶¶ 10-11; *see also Vaughn* Index, attached hereto). Accordingly, summary judgment should be granted in favor of Defendant VA.

### a. The VA Properly Invoked Exemption (b)(6).

Exemption 6 of the FOIA provides for the withholding of matters contained in personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that Exemption 6 "'[was] intended to cover detailed government records on an individual which can be identified as applying to that individual."' *Department of State v. Washington Post Co.,* 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, *reprinted in* 1966 U.S. Code Cong. & Admin. News 2428); *New York Times Co. v. NASA,* 920 F.2d 1002, 1005 (D.C. Cir. 1990) *(en banc).*

In *Department of State v. Washington Post Co.,* the Supreme Court held:

> '[T]he protection of an individual's right of privacy' which Congress sought to achieve by preventing 'the disclosure of [information] which might harm the individual,' H.R. Rep. No. 1497, supra, at 11, surely was not intended to turn upon the label of the file which contains the damaging information.

*Id.,* 456 U.S. at 601. Thus, even information which is not specifically located in "personnel files" comes within the penumbra of Exemption 6. Indeed, the Supreme Court clarified that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6. *Id.* at 599-603, 601. This broad construction of "similar files" was necessary in view of Congress' primary purpose in enacting Exemption 6, which was "to protect individuals

from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Washington Post Co.,* 456 U.S. at 599.

In this case, VA withheld, under Exemption 6, personally identifying information of its employees. (Fuemmeler Decl. ¶¶ 10-11). As the information in question can "be identified as applying to [a particular] individual," *Washington Post Co.,* 456 U.S. at 602, the information is contained in files which clearly satisfy the threshold requirement of Exemption 6 as defined by the Supreme Court.

Having established that the withheld information meets the threshold requirement of Exemption 6, a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." This requires a balancing of the public interest in disclosure against the individual privacy interest that would be invaded by release of the information. *See, e.g., NARA v. Favish,* 541 U.S. 157, 172 (2004); *Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749 (1989) *[Reporters Committee]; Department of the Air Force v. Rose,* 425 U.S. 352, 372 (1976). The limiting language, "clearly unwarranted invasion of personal privacy," strikes "a proper balance between protection of an individual's right of privacy and preservation of the public's right to government information by excluding those kinds of files the disclosure of which might harm the individual." *Department of the Air Force v. Rose,* 425 U.S. at 372 (citations omitted).

The first step in the balancing test is to identify the privacy interest at issue. *See Reporters Committee,* 489 U.S. at 763. In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized privacy interest of the subject of such information. *See Schell v. Department of Health & Human Services,* 843 F.2d 933, 938 (6th Cir. 1988); *Ripskis v. Department of Housing and Urban Development,* 746 F.2d 1, 3

(D.C. Cir. 1984).

Here, there can be no question that viable privacy interests are at stake. There have been numerous and recent threatening incidents targeting VA research labs at the Richmond VAMC. (Declaration of Michael Fallon ("Fallon Decl.") ¶ 4; *see also* Power Point Presentation on incident, attached hereto).

For example, on June 12, 2017, a VA operator at the VA research labs at the Richmond VAMC received a call where the caller stated, "there is a bomb on the third floor," which resulted in evacuation protocol, which coincided with media reports made on March 29, March 30, March 31, April 2, April 3, April 4, April 13, April 17, May 8, May 16, May 21, and June 13, 2017 regarding canine research being conducted at the Richmond VAMC. (Fallon Decl. ¶ 4; *see also* Power Point Presentation on incident, attached hereto).

In yet another recent example, On June 14, June 16, and June 21, 2017, Plaintiff WCW posted the Richmond VAMC's Public Affairs Officer's direct telephone line on WCW's Facebook page and asked the public to call the Officer to demand that the facility to stop using canines. As a result of Plaintiff's Facebook posts, the facility received approximately 2500-3000 phone calls over an approximately two week span expressing opposition to the canine research, which compromises patient care by clogging phone lines. (Fallon Decl. ¶¶ 6-7; *see also* Power Point Presentation on incident, attached hereto).

In another example, in December 2016, VA doctor, Dr. Alex Tan's name was released, in error, by the National Institute of Health ("NIH"), when NIH responded to a FOIA request. In March 2017, these documents, including Dr. Tan's name were made public by WCW, and media sources. Dr. Tan subsequently received threats from the Daily Caller comments section. One comment said "OMG - This "TAN" is a madman and needs to be put down himself." (Fallon Decl.

¶¶ 9-10; *see also* Power Point Presentation on incident, attached hereto).

On September 27, 2017, Dr. Cindy Buckmaster, who is a VA researcher with Baylor University and Americans for Medical Progress Chair was quoted in a September 25, 2017, USA Today article supporting VA research, subsequently received threatening electronic mail. In the mail, the sender states, in pertinent part, "let me see u in person so i can torture u like u torture those dogs. i want to shoot u with a shotgun right between the eyes u bitch… dont let me find out where u live because i will hunt u down bitch… again watch your back because u never know whats around the corner. FUCK U BITCH!!!!!!!!!! I SO WANT TO PUT U IN A CAGE AND FUCK U UP BITCH... PLEASE DIE." (Fallon Decl. ¶ 11; *see also* Power Point Presentation on incident, attached hereto).

In early May 2017, the canine research facility at the Milwaukee VAMC received three calls from the public, which were documented in formal Reports of Contact. In one of the calls, the callers stated, in pertinent part, "take you people down" and "we'll see what you do then." (Fallon Decl. ¶ 13 *see also* Power Point Presentation on incident, attached hereto).

In September 2017, on Plaintiff's WCW Facebook page, where stories about the Richmond VAMC's medical research have been posted, several threatening comments were posted, including statement, "Devils death 2 them people disgusting…Let us do the torture experiment one congressmen and congresswomen and the doctors…Wishing the researchers the same ending, I have rescued many dogs, humans are trash…Would like to gutshoot these nazis." (Fallon Decl. ¶ 14; *see also* Power Point Presentation on incident, attached hereto).

In April 2017, White Coat Waste "also has ads running on Facebook directed at Zablocki (Milwaukee) VA employees, offering $1,000 for information about "animal abuse" in the dog labs. (Fallon Decl. ¶ 15; *see also* Power Point Presentation on incident, attached hereto).

In yet another example, in May 2017, a VA employee took illegal photographs of dogs and the Animal facility while completing a work order, and in or about July 2017, released those photos to ABC 8 News, along with the blue prints for the Animal Facility. Upon information and belief, those photos were circulated to Plaintiff and Guardians of Animal Welfare, and due to this breach, security was increased at the Animal facility as well as at several employees' homes. (Fallon Decl. ¶ 5; *see also* Power Point Presentation on incident, attached hereto).

Disclosing the names of the individuals involved in this subject matter has already subjected VA employees to annoyance or harassment or safety concerns in their private lives. Indeed, the previous disclosures of VA employees working in these laboratories have led to just the kind of harassment and safety issues (detailed herein) that the Supreme Court invoked Exemption 6 to protect. The Supreme Court's view of the FOIA as stated in *Reporters Committee:*

> Other portions of the FOIA itself bolster the conclusion that disclosure of records regarding private citizens, identifiable by name, is not what the framers of FOIA had in mind.

489 U.S. at 756. Accordingly, there is no public interest in the release of this information. Once a privacy interest has been found to exist, a determination regarding whether information has been properly withheld necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., Reporters Committee,* 489 U.S. at 774. If a document invades a third party's privacy, and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6. *Id.*

Here, the disclosure of the identities and personal information who were involved in the subject matter of this request is simply not relevant to the public's understanding of how VA

conducts its business. *Public Citizen Health Research Group v. Department of Labor,* 591 F.2d 808, 809 (D.C. Cir. 1978) (the Court of Appeals stated that since this a balancing test, any invasion of privacy can prevail, so long as the public interest balanced against it is sufficiently weaker. The threat to privacy thus need not be patent or obvious to be relevant. It need only outweigh the public interest.

Here, as shown above, there can be no dispute that there are substantial privacy interests on one side of the balancing equation. When these interests are balanced against a nonexistent public interest in the personal information, the VA's determination to withhold the information must clearly prevail. Indeed, as this Circuit has repeatedly observed, something, even a modest private interest, outweighs nothing every time. *National Ass'n of Retired Federal Employees v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989), *cert. denied,* 494 U.S. 1078 (1990); *accord Beck v. Department of Justice,* 997 F.2d 1489, 1494 (D.C. Cir. 1993).

Because, as established above, there are substantial privacy interests to be protected in the information withheld, and there is no public interest in the disclosure of the information, the Court should find that the VA properly invoked Exemption 6.

### b. <u>VA Properly Applied FOIA Exemption (b)(5).</u>

Exemption 5 of FOIA protects "inter-agency or intra agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The deliberative process privilege in Exemption 5 include those "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative. *Access Reports v. U.S. Dep't of Justice,*

926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas,* 617 F.2d at 868; *Tax Analysts v. IRS,* 117 F.3d 607, 616 (D.C. Cir. 1997). For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy. *See Jordan v. US. Dep't of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc). To show that a document is predecisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad,* 182 F. Supp. 2d at 7.

A document is "deliberative" if it "'reflects the give-and-take of the consultative process.'" *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010). The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010), or if disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."' *Quarles* v. *Dep't of Navy,* 893 F.2d 390, 392 (D.C. Cir. 1990). "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports,* 926 F.2d at 1195.

Here, the document in question, the ACORP Protocol is both pre-decisional and deliberative. (Fuemmeler Decl. ¶ 13). The document by its nature is deliberative, since they discuss unadopted opinions of the Principal Investigator and research personnel, in the research being conducted in the protocol. The release of certain portions of this research, such as the names of the principal investigators and research personnel would have a chilling effect on the ability of the agency official to discuss and evaluate issues raised in the research, have frank and open discussions before the research is completed, and stop the research prematurely. (Fuemmeler Decl.

¶ 13).

The ACORP protocol was prepared for the purpose of deciding how to conduct research and would disclosure of the agency official's thoughts and unadopted opinions, which is likely to compromise the integrity of this process, prior to the final decision. Accordingly, VA's invocation of Exemption 5 was proper. (Fuemmeler Decl. ¶ 13).

      c.  **VA Properly Applied FOIA Exemption (b)(3).**

FOIA Exemption (b)(3) shields information "specifically exempted from disclosure by statute ... if that statute" either (1) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, the VA has invoked 35 U.S.C. § 205 which protects the Confidentiality of Patents in withholding documents pursuant to Exemption (b)(3). (Fuemmeler Decl. ¶ 14).

35 U.S.C. § 205 states, "Federal agencies are authorized to withhold from disclosure to the public information disclosing any invention in which the Federal Government owns or may own a right, title, or interest (including a nonexclusive license) for a reasonable time in order for a patent application to be filed. Furthermore, Federal agencies shall not be required to release copies of any document which is part of an application for patent filed with the United States Patent and Trademark Office or with any foreign patent office." Here, ACORP # 02235 contains information that is confidential and privileged, trade secret information, as well as information that is pending patent. (Fuemmeler Decl. ¶ 14). Accordingly, VA's invocation of Exemption 3 was proper.

    **3.**  **VA Complied with the FOIA's Segregability Requirement.**

Finally, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt

under this section." 5 U.S.C. § 552(b). The D.C. Circuit has held that district courts have an affirmative obligation to consider the issue and make segregability findings. *See Trans-Pacific Policing Agreement v. United States Customs Serv.,* 177 F.3d 1022 (D.C. Cir. 1999). Ms. Fuemmeler has attested that no reasonably segregable information has been withheld. (Fuemmeler Decl. ¶¶ 10-11). Indeed, the Fuemmeler declaration demonstrates that all documents reviewed were processed to achieve maximum disclosure consistent with the provisions of FOIA and U.S. Department of Veterans Affairs policy. Accordingly, VA has met the reasonable segregation requirement.

## CONCLUSION

For the foregoing reasons Defendant respectfully requests that the Court enter judgment in favor of all Defendants, and dismiss Plaintiff's complaint as a matter of law.

Date: October 16, 2017           Respectfully submitted,

                                 JESSIE K. LIU
                                 UNITED STATES ATTORNEY
                                 D.C. BAR NUMBER 472845


                                 DANIEL F. VAN HORN, D.C. Bar No. 924092
                                 Chief, Civil Division


                                 _____/s/_____
                                 RHONDA L. CAMPBELL, D.C. Bar No. 462402
                                 Assistant United States Attorneys
                                 Civil Division
                                 555 4th Street, N.W.
                                 Washington, D.C. 20530
                                 (202) 252-2559
                                 Rhonda.campbell@usdoj.gov

                                 *Counsel for United States*