**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WHITE COAT WASTE PROJECT

              Plaintiff,

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

              Defendant.

No. 17-cv-1155 (EGS)

## MEMORANDUM OPINION

## I.    Introduction

    This case closely resembles *White Coat Waste Project v.
United States Department of Veterans Affairs* ("*WCW I*"), 404 F.
Supp. 3d 87 (D.D.C. 2019). Plaintiff White Coat Waste Project
("WCW") brought both actions under the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552, against the United States
Department of Veterans Affairs ("VA"). The related cases concern
WCW's separate FOIA requests for certain information about the
publicly-funded canine experiments at the VA's facilities—
namely, the names of the principal investigators on the animal
research protocols. *WCW I* involved the experiments at Louis
Stokes Cleveland Veterans Affairs Medical Center ("Stokes VAMC")
in Ohio. This case involves experiments at the Hunter Holmes
McGuire Veteran Affairs Medical Center ("McGuire VAMC") in
Richmond, Virginia, which have captured the public's attention.

Invoking two of the same FOIA exemptions (Exemptions 5 and 6) in both actions, the VA withheld the requested information based on the nature of the research and the asserted privacy interests of the researchers. The VA claims that the names of the principal investigators must be shielded from disclosure based on the substantial privacy interests at stake in both cases, notwithstanding that the VA's own website lists the principal investigators, publications include the names of the researchers, and the VA will release the names after the completion of the animal research. Where the related actions part ways, however, is on the narrow issue in this case of whether the VA properly redacted the title of a single animal research protocol—Animal Component of Research Protocol numbered 02235 ("ACORP # 02235")—under Exemption 3.

Pending before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court concludes that: (1) the VA improperly withheld the principal investigators' names under Exemptions 5 and 6; and (2) the VA properly withheld the title of ACORP # 02235 pursuant to Exemption 3. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** the VA's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** WCW's Cross-Motion for Summary Judgment.

## II. Background

The following facts—drawn from the parties' submissions—are undisputed. *See, e.g.*, Def.'s Statement of Undisputed Material Facts ("Def.'s SOMF"), ECF No. 10-2 at 1-8; Pl.'s Counter-Statement of Material Facts ("Pl.'s SOMF"), ECF No. 13-2 at 1-16.[1] Because the VA does not dispute the facts in WCW's Counter-Statement of Material Facts, *see* Def.'s Reply, ECF No. 16 at 1-12, the Court assumes the facts identified by WCW are admitted, *see* LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

### A. Factual Background

WCW, a non-profit organization, aims to "unite animal-lovers and liberty-lovers to expose and end wasteful taxpayer-funded animal experiments." Pl.'s SOMF, ECF No. 13-2 at 9 ¶ 17. McGuire VAMC is one of the facilities carrying out the federally-funded experiments on dogs. *Id*. at 10 ¶ 24. The VA's animal research protocols indicate that "some [of] McGuire VAMC's dog experiments involved the highest pain classification—

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Category E—where animals are subjected to intense pain with no access to pain relief." *Id.* at 10 ¶ 23. In response, WCW requested that the VA's Office of Inspector General open an investigation into the experiments. *Id.* at 10 ¶ 25. At some point, WCW asked its supporters on social media to contact McGuire VAMC's Public Affairs Officer to express their opposition to the experiments. *Id.* at 15 ¶ 51.

The experiments at McGuire VAMC garnered media attention. Decl. of Justin Goodman ("Goodman Decl."), ECF No. 13-3 at 5-10 ¶ 17 (stating that "more than fifty separate news stories detail[] the controversy over the McGuire VAMC's dog experiments"). Between 2016 and 2017, federal and state lawmakers took certain actions in response to the experiments. Pl.'s SOMF, ECF No. 13-2 at 11 ¶¶ 28-31. Members of Congress submitted a request to the Government Accountability Office to perform an audit of the federal agencies conducting the experiments, *id.* at 11 ¶ 28; state legislators sent a letter to the Governor of Virginia inquiring about the Commonwealth's role in the experiments, *id.* at 11 ¶ 31; and the United States House of Representatives unanimously passed an amendment to defund the experiments at the VA's facilities for fiscal year 2018, *id.* 11 ¶ 30. On July 12, 2017, two members of Congress introduced the "Preventing Unkind and Painful Procedures and Experiments on Respected Species Act of 2017" or the "PUPPERS Act of 2017" to

4

"prohibit the Secretary of Veterans Affairs from conducting medical research causing significant pain or distress to dogs." H.R. 3197, 115th Cong. (2017); *see also* H.R. 1155, 116th Cong. (2019).

### B. WCW's FOIA Request

On January 10, 2017, WCW submitted a request to McGuire VAMC seeking the following three categories of records:

> [1] A current census of all dogs actively held and used in the McGuire VAMC laboratories (including each animal's ID number, breed, name, color and distinctive markings, date of birth, source, USDA pain category, and assigned protocol). Such records must be maintained and made available to the public per 9 CFR § 2.35 (Recordkeeping requirements of the Animal Welfare Act)[;]
>
> [2] Photographs and videos of these dogs[; and]
>
> [3] Active Institutional Animal Care and Use Committee (IACUC) approved protocol/s to which these dogs are assigned[.]

Pl.'s SOMF, ECF No. 13-2 at 1-2 ¶ 1 (quoting Decl. of Emily Fuemmeler ("Fuemmeler Decl."), ECF No. 10-5 at 2 ¶ 5).[2]

---

[2] As noted in *WCW I*, the VA does not dispute WCW's assertion that "the [Animal Welfare Act ("AWA"), 7 U.S.C. § 2131, *et seq.*] today requires that every research facility that uses animals for laboratory experiments must have an Institutional Animal Care and Use Committee (IACUC) which evaluates the facility's use and care of animals used in experiments." *WCW I*, 404 F. Supp. 3d at 93 n.2; *see also* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 13-1 at 14.

Thereafter, McGuire VAMC conducted a search for materials responsive to WCW's FOIA request. *Id.* at 8-9 ¶¶ 14-16 (citing Decl. of William Maragos ("Maragos Decl."), ECF No. 10-6 at 2 ¶¶ 5-6, 8-10). Following the VA's release of certain responsive materials to WCW on March 1, 2017, *id.* at 2 ¶ 3, WCW then administratively appealed certain redactions in the VA's initial production, *id.* at 2 ¶ 4. The VA redacted information, including the names of the principal investigators and the protocol titles, under claimed FOIA Exemptions. *Id.* at 2-5 ¶ 5.[3]

Before the VA responded to WCW's administrative appeal, WCW submitted a FOIA request to the National Institute of Health ("NIH") in April 2017 to obtain certain reports from five facilities, including McGuire VAMC, regarding the noncompliance

---

[3] The VA invoked Exemptions 3, 5, 6, and 7(F). Fuemmeler Decl., ECF No. 10-5 at 3 ¶ 11, 4 ¶ 14. Exemption 3 protects from disclosure materials "specifically exempted from disclosure by statute," if such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" *Id.* § 552(b)(5). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" *Id.* § 552(b)(6). Exemption 7(F) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." *Id.* § 552(b)(7)(F).

with the AWA. *Id.* at 9 ¶ 19. In turn, NIH released documents
showing that: (1) "McGuire VAMC researchers failed to comply
with federal humane care regulations under the AWA, resulting in
the deaths of three dogs during experiments in 2016," *id.* at 9 ¶
19; and (2) "the McGuire VAMC IACUC warned the facility that
future AWA violations could result in suspension or terminations
of [Dr.] Tan's animal protocol," *id.* at 10 ¶ 21. One of the
reports contained within NIH's production stated that a
principal investigator at McGuire VAMC, Alex Tan, M.D.
("Dr. Tan"), "showed 'reckless behavior' and 'lack of foresight'
after cutting open a dog's lung during a heart surgery." *Id.* at
9 ¶ 20 (quoting Goodman Decl., ECF No. 13-3 at 2 ¶ 6).

On August 25, 2017, the VA issued its "Final Agency
Decision," concluding, *inter alia*, that: (1) its application of
Exemption 6 allows withholding the personal information of the
research personnel, including the principal investigators,
because those individuals "have a privacy interest in being
protected from annoyance and harassment," *id.* at 2-3 ¶ 5;
(2) "[r]elease of their names, locations, or room numbers where
they work may also open these individuals to potential attack,
harassment or threatening behavior," *id.* at 3 ¶ 5; and
(3) "[a]ny general public interest will be satisfied once the
research protocols are released to the public on [the] VA's
website, after the research is completed," *id.* Asserting

7

Exemption 5, the VA also concluded that:

> The release of certain portions of this research, such as the names of the principal investigators and research personnel would have a chilling effect on the ability of the agency official to discuss and evaluate issues raised in the research frankly and openly before the research is completed, because these individuals may fear for their safety and stop the research prematurely.

*Id*. at 4 ¶ 5.

Finally, the VA concluded that Exemption 3 justifies withholding the protocol title contained in ACORP # 02235 because "ACORP # 02235 contains information that is confidential and privileged, trade secret information, as well as information that is pending patent pursuant to 35 U.S.C. § 205, which protects the Confidentiality of Patents." *Id*. at 5 ¶ 5. The VA stated that "the Federal Technology Transfer Act ('FTTA'), [which] allows federal agencies the discretion to protect any commercial and confidential information that results from a Cooperative Research And Development Agreement ('CRADA') with a nonfederal party, has been held to qualify as an Exemption 3 statute." *Id*. (citing 5 U.S.C. § 3710a).

### C. Procedural Background

On June 14, 2017, WCW filed the present action. *See generally* Compl., ECF No. 1. After litigation had already begun, the VA released certain information in response to WCW's administrative appeal, but the VA stood by its initial

conclusions to withhold the names of the principal investigators and the title of ACORP # 02235. Pl.'s SOMF, ECF No. 13-2 at 15 ¶¶ 54-55. On November 1, 2017, while this case was being litigated, WCW filed a separate, related action to obtain records concerning the experiments at Stokes VAMC. *See* Compl., *WCW I*, Civ. Action No. 17-2264, ECF No. 1 at 1 ¶ 1. Because WCW was awaiting a final agency determination on its FOIA requests in *WCW I*, WCW argued that "consolidation [of the two cases] would cause substantial delay to the resolution of the initial action and because there are only limited common issues of fact and law between the two cases." Pl.'s Resp. to Order to Show Cause, ECF No. 12 at 1. The Court did not exercise its discretion to consolidate the related actions under Federal Rule of Civil Procedure 42(a)(2). *See* Min. Order of Nov. 20, 2017.

In this case, the parties filed cross-motions for summary judgment. *See, e.g.*, Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 10 at 1-2; Pl.'s Cross Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 13 at 1-3.[4] After those motions became ripe, the Court

---

[4] Neither party attached proposed orders to the motions and opposition briefs, as required by Local Civil Rule 7.1(c). *See, e.g.*, Def.'s Mot., ECF No. 10 at 1-2; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 10-1 at 1-14; Pl.'s Mot., ECF No. 13 at 1-3; Pl.'s Mem., ECF No. 13-1 at 1-53; Def.'s Reply, ECF No. 16 at 1-12; Pl.'s Reply, ECF No. 17 at 1-21. The Court construes the VA's reply brief—styled "Defendant's Reply in Support of Its *Renewed* Motion for Summary Judgment"—as its reply in support of its motion for summary judgment and in opposition to WCW's cross-motion for summary judgment. *See*

referred the motions to a Magistrate Judge for a Report and Recommendation ("R & R"), and the Court stayed the case. Min. Order of Mar. 8, 2018. Before a decision on the pending motions in the instant action, this Court resolved the parties' cross-motions for summary judgment in the related case. *See WCW I*, 404 F. Supp. 3d at 109; *see also* Final Order, *WCW I*, Civ. Action No. 17-2264 (D.D.C. Feb. 6, 2020), ECF No. 44 at 1-7. On August 29, 2019, this Court in *WCW I* granted in part and denied in part those motions, finding that: (1) the VA improperly withheld the principal investigator's name under Exemption 5; and (2) the VA's declarations, which contained inadmissible hearsay, failed to demonstrate a substantial privacy interest in the principal investigator's name under Exemption 6. *WCW I*, 404 F. Supp. 3d. at 99, 106-07. The Court held in abeyance WCW's cross-motion for summary judgment as to the Exemption 6 issue and directed the VA to submit additional information as to the asserted privacy interest of the Stokes VAMC's principal investigator. *Id*. at 107.

On February 6, 2020, the Court granted summary judgment in favor of WCW on the Exemption 6 issue, finding that: (1) the VA

_____

Def.'s Reply, ECF No. 16 at 1 (emphasis added). As WCW correctly notes, the VA's motion for summary judgment was not "ruled on, stricken, or withdrawn, and as a result it [had] not been 'renewed' in any way." Pl.'s Reply, ECF No. 17 at 6 n.1; *see generally* Docket for Civ. Action No. 17-1155.

failed to meet its burden of establishing a substantial privacy interest in the name of the Stokes VAMC's principal investigator; and (2) the public interest outweighed any asserted privacy interest. Final Order, *WCW I*, Civ. Action No. 17-2264 (D.D.C. Feb. 6, 2020), ECF No. 44 at 4-7. A few days later, on February 11, 2020, the Court granted WCW's motion to lift the stay in this case, and the Court vacated the referral for the R & R. Min. Order of Feb. 11, 2020.

### D. The Motions

In moving for summary judgment in the instant action, the VA advances five primary arguments: (1) it conducted adequate and reasonable searches for responsive materials, Def.'s Mem., ECF No. 10-1 at 4-5; (2) it properly invoked Exemption 6 to withhold the names of the principal investigators and research personnel, claiming that there are substantial privacy interests at stake and there is no public interest in the names, *id*. at 6-11; (3) it appropriately withheld certain portions of the research protocols, including the names of the principal investigators and researchers, under Exemption 5 because those documents are pre-decisional and deliberative, *id*. at 11-13; (4) it properly redacted the title of ACORP # 02235 under Exemption 3 because "ACORP # 02235 contains information that is confidential and privileged, trade secret information, as well as information that is pending patent," *id*. at 13; and (5) it

11

has not withheld any reasonably segregable, non-exempt information, *id*. at 14.

WCW argues that it is entitled to summary judgment for five main reasons: (1) federal government animal researchers do not have a substantial privacy interest in their names because their names are publicly available on government websites, including the VA's own website, and the McGuire VAMC researchers regularly include their names in academic publications about the dog experiments, Pl.'s Mem., ECF No. 13-1 at 27-31; (2) the public interest in the disclosure of the names is strong because the dog experiments have prompted federal and state lawmakers to demand accountability, generated media coverage, and sparked criticism from the public, *id*. at 31-45; (3) the VA improperly invoked Exemption 5 because the factual information contained within the research protocols does not reveal the agency's deliberations or opinions, and the protocols are not pre-decisional given that those documents are the decisions, *id*. at 49-50; (4) the VA cannot rely on 35 U.S.C. § 205 as the relevant withholding statute under Exemption 3 to withhold the title of ACORP # 02235 because Section 205 protects information "for a reasonable time in order for a patent application to be filed," and "the patent application, by the agency's own account, has already been filed," *id*. at 52; and (5) the VA waived the invocation of the FTTA as the withholding statute under

Exemption 3 because the VA did not advance such an argument in its opening brief, *id.*

Over the course of this litigation, the parties narrowed the scope of the disputed issues to: (1) the disclosure of the identities of the principal investigators; and (2) the title of ACORP # 02235. *See* Pl.'s Reply, ECF No. 17 at 6-7. WCW does not challenge that the VA has adequately conducted reasonable searches, and properly segregated the non-exempt information from the exempt information. *Id.; see also* Def.'s Reply, ECF No. 16 at 11-12. Nor does WCW contest the redactions under Exemption 7(F) in the *Vaughn* index. *See* Pl.'s Mem., ECF No. 13-1 at 12-52; *see also* Def.'s Ex. 1, ECF No. 10-3 at 1-4 (*Vaughn* Index).[5] The briefing is now complete, and the motions are ripe and ready for the Court's adjudication.

### III. Legal Standard

The "vast majority" of FOIA cases can be resolved on summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[5] "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

matter of law." Fed. R. Civ. P. 56(a). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. DOJ*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citation omitted). Under FOIA, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester[,]" and summary judgment is appropriate only after "the agency proves that it has fully discharged its [FOIA] obligations . . . ." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of

other documents.'" *SafeCard Servs*., 926 F.2d 1197 at 1200 (citation omitted).

## IV. Analysis

As in *WCW I*, the core of the parties' dispute in this case is whether the VA properly withheld the names of the principal investigators at McGuire VAMC under Exemptions 5 and 6. *Compare* Pl.'s Reply, ECF No. 17 at 6, 10-19, *with WCW I*, 404 F. Supp. 3d at 96 ("The sole dispute is whether the VA's redactions of [Stokes VAMC's] principal investigator's name . . . were justified under Exemptions 5 and 6."). In each case, the parties presented similar arguments as to the VA's withholdings. *Compare* Def.'s Mem., ECF No. 10-1 at 6-13, *and* Pl.'s Mem., ECF No. 13-1 at 22-51, *with WCW I*, 404 F. Supp. 3d at 94-96. This case differs from *WCW I* in that the VA withheld the title of ACORP # 002235 pursuant to Exemption 3 while releasing the titles of the other protocols. *See* Def.'s Mem., ECF No. 10-1 at 13.

The Court addresses the contested FOIA Exemptions in turn, concluding that: (1) the VA improperly withheld the names of the principal investigators under Exemptions 5 and 6; and (2) the VA properly invokes the FTTA as the withholding statute under Exemption 3 to redact the title of ACORP # 02235.[6]

---

[6] WCW does not contest the VA's withholdings under Exemption 7(F), and the VA does not move for summary judgment as to those withholdings. *See* Def.'s Mem., ECF No. 10-1 at 5-13; *see also* Pl.'s Mem., ECF No. 13-1 at 22-52. WCW does not challenge the

## A. The VA's Invocation of Exemption 5 Was Improper

The VA invokes Exemption 5's deliberative process privilege
to protect the claimed deliberative nature of the protocols and
the integrity of the research process. *See* Def.'s Mem., ECF No.
13-1 at 12-13. In *WCW I*, this Court explained that Exemption 5's
deliberative process privilege is one of the privileges against
discovery, and that privilege protects from disclosure documents
that would reveal an agency's deliberations prior to arriving at
a particular decision. 404 F. Supp. 3d at 97 (citing *Dent v.
Exec. Office for U.S. Att'ys*, 926 F. Supp. 2d 257, 267–68
(D.D.C. 2013)). Documents withheld under the deliberative
process privilege must be both "predecisional" and
"deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537
(D.C. Cir. 1993). A communication is pre-decisional if "it was
generated before the adoption of an agency policy" and

---

adequacy of the searches, and the segregability determinations.
Pl.'s Reply, ECF No. 17 at 6-7. Neither does WCW challenge the
redactions to: (1) the principal investigators' other personal
identifying information; or (2) the non-principal investigators'
information. *See id*. at 6-8. Although WCW does not contest these
issues, the Court has an independent obligation to determine
whether the VA has met its FOIA obligations. *See Sussman v. U.S.
Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Having
reviewed the VA's declarations and the *Vaughn* index, *see, e.g.*,
Def.'s Ex. 1, ECF No. 10-3 at 1-4; Fuemmeler Decl., ECF No. 10-5
at 1-5; Maragos Decl., ECF No. 10-6 at 2-3, the Court finds that
the VA has fulfilled its obligations with respect to these
uncontested matters. Accordingly, the Court **GRANTS** the VA's
motion for summary judgment as to the adequacy of the searches
and the segregability determinations.

deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "Even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue[.]" *Id.* Courts construe the deliberative process privilege "as narrowly as consistent with efficient Government operation." *United States v. Phillip Morris*, 218 F.R.D. 312, 315 (D.D.C. 2003) (quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 667 (D.C. Cir. 1981)).

Before addressing the substantive issue of whether Exemption 5's deliberative process privilege applies to the names of the principal investigators, WCW first argues—and the VA does not dispute—that "[n]owhere in the 283 pages of animal protocols that the [VA] produced does it identify even a single redaction based on Exemption 5" and the VA's "*Vaughn* index does not identify even a single Exemption 5 assertion." Pl.'s Mem., ECF No. 13-1 at 47; *see also* Pl.' Reply, ECF No. 17 at 17 ("[WCW] also provided the [VA's] *entire production* to demonstrate that the [VA] does not assert Exemption 5 as a basis for withholding in any of the 288 pages it produced."). But the VA asserted Exemption 5 at the administrative level, and the VA points out that one of the agency's declarants avers that the VA withheld the names of the principal investigators and other

research personnel under Exemption 5. *E.g.*, Def.'s Reply, ECF No. 16 at 9; Fuemmeler Decl., ECF No. 10-5 at 3 ¶ 11, 4 ¶ 13. "[T]he exemption only need be raised at a point in the district court proceedings that gives the court an adequate opportunity to consider it," and WCW "has cited no . . . case that supports a different proposition." *Sciba v. Bd. of Governor of Fed. Reserve Sys.*, No. CIV.A.04-1011, 2005 WL 758260, at *1 n.3 (D.D.C. Apr. 1, 2005).

To the extent that the VA asserts Exemption 5, the Court is persuaded by WCW's next argument that the names of the principal investigators are neither pre-decisional nor deliberative. *See* Pl.'s Mem., ECF No. 13-1 at 50.[7] In the VA's view, "[t]he release of certain portions of this research, such as the names of the principal investigators and research personnel would have a chilling effect on the ability of the agency official to discuss and evaluate issues raised in the research, have frank and open discussions before the research is completed, and stop the research prematurely." Def.'s Mem., ECF No. 10-1 at 12. WCW

_____

[7] Because WCW solely seeks the names of the principal investigators, *see* Pl.'s Reply, ECF No. 17 at 6, the Court need not decide whether the protocols themselves are "pre-decisional" or "deliberative" within the meaning of Exemption 5, *see Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 140 (D.D.C. 2014) (declining to decide whether a document was pre-decisional because the parties only challenged the redacted signature pages in the document); *see also WCW I*, 404 F. Supp. 3d at 98 n.9 (same).

contends that "[t]he investigators' names are not predecisional" because "[t]here is no agency policy or law being developed through the use of principal investigators' names." Pl.'s Mem., ECF No. 13-1 at 50. And WCW argues that the names are not deliberative because "[t]he agency is not using the names of investigators to formulate agency policy" and such "information fits squarely within the type of factual material that the deliberative process privilege does not protect." *Id*. The Court agrees.

"[T]he agency has the burden of establishing what deliberative process is involved," *Coastal States Gas Corp.*, 617 F.2d at 868, but the VA fails to demonstrate how the principal investigators' names "implicate any deliberative process that may have gone into the creation of [each protocol] as a whole," *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d at 140. In *Ancient Coin Collectors Guild v. United States Department of State*, 641 F.3d 504, 513 (D.C. Cir. 2011), the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held that "the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." In that case, the D.C. Circuit concluded that Exemption 5 covered the factual

summaries in a federal advisory committee's reports regarding import restrictions on cultural artifacts because those documents: (1) "were culled by the Committee from the much larger universe of facts presented to it," *id.* at 513 (citation omitted); (2) reflected an "exercise of discretion and judgment calls," *id.*; and (3) "include[d] lists of events selected to show whether a given type of item ha[d] been pillaged," *id.* at 514.

As in *WCW I*, the names of the principal investigators neither reflect an "exercise of judgment as to what issues" should bear on the research, nor involve the selection of facts as part of the agency's deliberative process. *WCW I*, 404 F. Supp. 3d at 98 (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513); *see also Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("Under the deliberative process privilege, factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt."). The names of the principal investigators conducting the experiments at McGuire VAMC are "indisputably 'factual,'" and those names "cannot be described as the 'materials embodying officials' opinions.'" *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d at 140 (quoting *Petroleum Info. Corp.*, 976 F.2d at 1434).

The VA's argument—that the principal investigators "may fear for their safety and stop the research prematurely," Def.'s Reply, ECF No. 16 at 9 (quoting Fuemmeler Decl., ECF No. 10-5 at 4 ¶ 13)—is unavailing. The VA fails to demonstrate that disclosure of the names of the principal investigators "would be likely to 'stifle honest and frank communication within the agency.'" *Petroleum Info. Corp.*, 976 F.2d at 1439 (quoting *Coastal States Gas Corp.*, 617 F.2d at 866). It is undisputed that "[r]esearchers at McGuire VAMC also regularly attach their names and a variety of other personal information to publications detailing their research." Def.'s Reply, ECF No. 16 at 10 (quoting Pl.'s Mem., ECF No. 13-1 at 29). It is uncontested that the NIH's "database reveals at least ten researchers at McGuire VAMC attaching their names to articles detailing dog research." Pl.'s Mem., ECF No. 13-1 at 29 (citing Pl.'s SOMF, ECF No. 13-2 at 13 ¶¶ 40-44, 14 ¶¶ 45-48, 15 ¶¶ 49-50). While is true that the "key question" is whether the release of information has the ability to "discourage candid discussion within the agency," *Access Reports v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (citation omitted), the VA fails to provide sufficient justifications to withhold the names of the principal investigators pursuant to Exemption 5's deliberative process privilege. The Court therefore finds that the VA has not carried its burden of demonstrating that disclosure of the

principal investigators' names "is likely in the future to stifle honest and frank communication within the agency." *Coastal States Gas Corp.*, 617 F.2d at 866. Accordingly, the Court **GRANTS** WCW's cross-motion for summary judgment and **DENIES** the VA's motion for summary judgment as to Exemption 5.

### B. The VA Improperly Withheld the Principal Investigators' Names Under Exemption 6

The Court next considers the issue of whether the VA properly invoked Exemption 6. As stated in *WCW I*, "Exemption 6 permits withholding of information when two requirements have been met." *WCW I*, 404 F. Supp. 3d at 99 (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982)). First, "the information must be contained in personnel, medical or 'similar' files." *Wash. Post Co.*, 456 U.S. at 598. The phrase "similar files" is understood broadly to include any "[g]overnment records on an individual which can be identified as applying to that individual." *Id.* at 602 (citation and internal quotation marks omitted). Exemption 6 covers "not just files, but also bits of personal information, such as names and addresses, the release of which would create[] a palpable threat to privacy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (citation and internal quotation marks omitted).

Next, "the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of

personal privacy." *Wash. Post Co.*, 456 U.S. at 598. This second requirement demands that the Court "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citation and internal quotation marks omitted). The only relevant public interest in this balancing analysis is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (citation and internal quotation marks omitted).

### 1. The Principal Investigators' Names Fall Within the Broad Meaning of "Similar Files"

*WCW I* is a starting point for the Court's Exemption 6 analysis. In *WCW I*, this Court broadly construed the phrase "similar files" and found that the name of the principal investigator at Stokes VAMC fell within Exemption 6's "similar files" category. 404 F. Supp. 3d at 99-101. As WCW acknowledged in *WCW I*, WCW recognizes in this case that the phrase "similar files" has a broad meaning. Pl.'s Mem., ECF No. 13-1 at 24. Indeed, the D.C. Circuit has broadly interpreted "'[s]imilar files' [to] include 'detailed Government records on an individual which can be identified as applying to that

individual[,]'" including his or her name. *Prison Legal News*, 787 F.3d at 1146–47 (quoting *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)). In this case, the names of the principal investigators qualify as "similar files" under D.C. Circuit case law. *See id*.

Nonetheless, WCW makes the same argument that this Court rejected in *WCW I*: "the principal investigators' names on the animal research protocols are 'essentially business,' rather than personal, in nature." Pl.'s Mem., ECF No. 13-1 at 25; *see also WCW I*, 404 F. Supp. 3d at 100. WCW's argument is unavailing because the Supreme Court has recognized that Exemption 6 covers "information which applies to a particular individual." *Wash. Post Co*., 456 U.S. at 602. To be sure, the D.C. Circuit in *Judicial Watch, Inc. v. Food & Drug Administration* held that the agency there "fairly asserted abortion-related violence as a privacy interest for both the names and addresses of persons and businesses associated with [the controversial drug] mifepristone," concluding that the non-disclosure of the names of the agency personnel and other personal identifying information was proper under Exemption 6 "to protect [those associated with mifepristone] from the injury and embarrassment that can result from the unnecessary disclosure of personal information." 449 F.3d at 153 (citation omitted).

Here, the VA relies on the averments of one of its declarants to explain that "the release of these individuals' names, locations, or offices make them vulnerable to 'potential attack, harassment or threatening behavior,' and the release of such personal details are 'inextricably linked to those individuals' expectations of working in a safe environment.'" Def.'s Reply, ECF No. 16 at 4 (quoting Fuemmeler Decl., ECF No. 10-5 at 3 ¶ 12). The controversy over the experiments at McGuire VAMC have captured widespread public attention and generated media coverage. Pl.'s SOMF, ECF No. 13-2 at 12 ¶ 32. WCW has publicly criticized the experiments at McGuire VAMC, and "WCW asked its supporters on Facebook to call the phone number for the McGuire VAMC's Public Affairs Officer 'and politely say you do not want your tax dollars funding dog abuse.'" *Id.* at 15 ¶ 51 (quoting Goodman Decl., ECF No. 13-3 at 14 ¶ 31). Consistent with this Court's finding in *WCW I* that the principal investigator's name fell within Exemption 6's "similar files" category, 404 F. Supp. 3d at 100, the VA clears the first hurdle in this case because Exemption 6 protects "bits of personal information, such as *names*," *Judicial Watch, Inc. v. FDA*, 449 F.3d at 152 (emphasis added).

## 2. The Competing Interests

"[T]he mere fact that an agency file or record contains personal, identifying information is not enough to invoke

Exemption 6—the information must also be 'of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion.'" *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49–50 (D.D.C. 2017) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). "This, in turn, requires a two-part analysis." *WCW I*, 404 F. Supp. 3d at 102 (quoting *Sai v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 259 (D.D.C. 2018)). First, the Court must "determine whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest, because [i]f no significant privacy interest is implicated . . . FOIA demands disclosure." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (citation and internal quotation marks omitted); *see also Prison Legal News*, 787 F.3d at 1147 ("The government bears the burden of showing that a substantial invasion of privacy will occur if the documents are released."). If the agency demonstrates that "a substantial privacy interest is at stake, then [the Court] must balance the privacy interest in non-disclosure against the public interest." *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009). "In undertaking this analysis, the [C]ourt is guided by the instruction that, 'under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the

Act.'" *Norton*, 309 F.3d at 32 (quoting *Wash. Post Co. v. United States Dep't of Health and Human Servs*., 690 F.2d 252, 261 (D.C. Cir. 1982)).

### a. Privacy Interests

"Substantial, in this context, means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *WCW I*, 404 F. Supp. 3d at 102 (quoting *Humane Soc'y of United States v. Animal & Plant Health Inspection Serv*., 386 F. Supp. 3d 34, 43 (D.D.C. 2019)). The parties disagree about whether there are substantial privacy interests at stake. *See* Def.'s Mem., ECF No. 10-1 at 8 ("[T]here can be no question that viable privacy interests are at stake."); *see also* Pl.'s Mem., ECF No. 13-1 at 27 ("[T]he principal investigators have no substantial privacy interest in the names."). Claiming that "[t]here have been numerous and recent threatening incidents targeting VA research labs at [McGuire] VAMC," Def.'s Mem., ECF No. 10-1 at 8, the VA argues that there are substantial privacy interests here, *id*. at 11. WCW does not dispute the existence of a privacy interest in the names of the principal investigators, but WCW contends that the interest "is, at most, de minim[i]s." Pl.'s Mem., ECF No. 13-1 at 31.

To support its contention that disclosure of the names will subject the principal investigators to annoyance and harassment,

*see* Def.'s Mem., ECF No. 10-1 at 10, the VA relies on a declaration from the VA's Chief Veterinary Medical Officer whose office is located in Atlanta, Georgia, and who is "responsible for VA animal research policy, including such activities at [McGuire VAMC]," Fallon Decl., ECF No. 10-4 at 1 ¶ 1.[8] The VA also relies on a Microsoft PowerPoint Presentation, entitled "Threats to Individuals," with twenty slides that contain a mix of text, images, and hyperlinks. Def.'s Ex. 5, ECF No. 11 at 1. The text in the PowerPoint presentation tracks the language in the Fallon declaration. *Compare id*. at 1-20, *with* Fallon Decl., ECF No. 10-4 at 2 ¶¶ 4-10, 3 ¶¶ 11-15.

The VA's declarant—Dr. Michael Fallon ("Dr. Fallon")— provides certain examples of incidents at McGuire VAMC and Milwaukee VAMC, as well as threats received by researchers with no apparent connections to the VA. *See* Fallon Decl., ECF No. 10-4 at 2 ¶¶ 4-10, 3 ¶¶ 11-15. According to the declarant, in June 2017, a VA operator received a threat that there was a bomb on the third floor, where no animal research is conducted. *Id*. at 2 ¶ 4; *see also* Def.'s Ex. 5, ECF No. 11 at 13. The declarant

---

[8] The VA cites to the "Declaration of Sarah B. Kotler" in its reply brief to support its position that the release of the names would cause an unwarranted invasion of personal privacy, Def.'s Reply, ECF No. 16 at 8, but WCW correctly points out that the VA did not file that declaration in this case, Pl.'s Reply, ECF No. 17 at 15-16. The record does include a declaration from Sarah B. Kotler. *See* Docket for Civ. Action No. 17-1155.

avers that WCW has circulated photographs of dogs at the research facility that were illegally obtained by a VA employee in May 2017. Fallon Decl., ECF No. 10-4 at 2 ¶ 5 (stating that the VA employee released the photographs and blueprints of the facility to a news outlet); *see also* Def.'s Ex. 5, ECF No. 11 at 10. And the declarant states that the facility received thousands of telephone calls opposing the canine research after WCW posted the McGuire VAMC's Public Affairs Officer telephone number on WCW's Facebook page. Fallon Decl., ECF No. 10-4 at 2 ¶¶ 6-7. According to the declarant, an animal advocacy group organized protests outside of McGuire VAMC in September and October 2017, which prompted increased security measures. *Id*. at 2 ¶ 8.

The declarant avers that "Dr. Tan received threats from the Daily Caller comments section" following the public release of his name by NIH in December 2016. *Id*. at 2 ¶ 10. On a slide in the PowerPoint presentation, the highlighted text in an image of a comment provides: "OMG -This 'TAN' is a madman and needs to be put down himself . . . ALSO dogs should NOT be used in experiments. The VA makes me angrier by the day[.]" Def.'s Ex. 5, ECF No. 11 at 3. According to the declarant, WCW's Facebook page includes stories about the research at McGuire VAMC, and the page contained "several threatening comments" in September 2017. Fallon Decl., ECF No. 10-4 at 3 ¶ 14.

WCW argues—and the Court agrees—that the Fallon declaration and the PowerPoint presentation raise various evidentiary issues that are left unaddressed by the VA. *E.g.*, Pl.'s Mem., ECF No. 13-1 at 35-38; Pl.'s Objs. to Fallon Decl., ECF No. 14 at 1-9.[9] WCW correctly points out that "[n]early every statement in the Fallon declaration fails [the] standard" under Rule 56(c)(4), Pl.'s Mem., ECF No. 13-1 at 36. "A principal command of Rule 56[(c)(4)] is straightforward: 'Supporting and opposing affidavits' on summary-judgment motions 'shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (footnote omitted); *see also* Fed. R. Civ. P. 56(c)(4). And "[a]lthough the rule's directive with respect to the admissibility of an affidavit's contents on summary judgment has been liberally construed, its requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented." *Londrigan*, 670 F.2d at 1174 (footnotes omitted).

---

[9] WCW objects to the averments in the Fallon declaration under Federal Rules of Evidence 401, 403, 602, 701, 802, and 1002. Pl.'s Objs. to Fallon Decl., ECF No. 14 at 1-8. WCW also objects to the PowerPoint presentation under Federal Rules of Evidence 602, 802, and 901. *Id.* at 9. The VA offers no response to WCW's objections or evidentiary arguments. *See* Def.'s Reply, ECF No. 16 at 1-12.

Here, Dr. Fallon attests that his "statements . . . in [the] declaration are made on the basis of [his] personal knowledge of the following incidents and upon [his] review of information available to [him] in [his] official capacity." Fallon Decl., ECF No. 10-4 at 1 ¶ 2. The VA argues that "the Fallon Declaration details a series of threatening incidents in recent history where [WCW], the media, and other advocacy groups used personally identifiable and private information to target [the VA's] labs at [McGuire] VAMC [and] other researchers across the country." Def.'s Reply, ECF No. 16 at 5. But WCW contends— and the Court agrees—that Dr. Fallon testifies about incidents without explaining the basis for his personal knowledge. Pl.'s Mem., ECF No. 13-1 at 36. According to WCW, "[i]t is unclear on what basis [Dr.] Fallon knows of the nature, content, or volume of calls placed to various unnamed people at the [McGuire VAMC] facility or the protest outside of it" because Dr. Fallon avers that he works in Atlanta, Georgia. *Id*. WCW argues—and the Court agrees—that Dr. Fallon fails to establish the basis for any personal knowledge of the incidents at McGuire VAMC and Milwaukee VAMC, as well as the incidents involving the researchers with no connections to the VA. *Id*.

Although "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties," *Barnard v. Dep't of Homeland*

*Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009), "it is a different
matter to rely on out-of-court statements from private third
parties to justify an agency's withholding," *Humane Soc'y of
United States*, 386 F. Supp. 3d at 44. The Fallon declaration and
the PowerPoint presentation include statements and information
based on third-party websites and second-hand accounts to
justify the redactions to the principal investigators' names.
*See, e.g.*, Fallon Decl., ECF No. 10-4 at 2 ¶¶ 5-6, 2 ¶¶ 9-10, 3
¶¶ 11-12, 3 ¶¶ 14-15; Def.'s Ex. 5, ECF No. 11 at 2-8, 10. The
VA did not submit a single declaration from a principal
investigator or researcher at McGuire VAMC with first-hand
knowledge of the alleged incidents. *See generally* Def.'s Mem.,
ECF No. 10-1. "[T]he second-hand, unsubstantiated accounts in
the [Fallon] declaration are inadmissible hearsay." *Humane Soc'y
of United States*, 386 F. Supp. 3d at 44.

The Court cannot rely on the statements and information in
the Fallon declaration and PowerPoint presentation that the VA
has neither confirmed nor verified. *See WCW I*, 404 F. Supp. 3d
at 105-06 (citing *Humane Soc'y of United States*, 386 F. Supp. 3d
at 45). As WCW correctly points out, "[Dr.] Fallon makes no
attempt to authenticate [the slides in the PowerPoint
presentation] or even *make mention* of the slides in his
declaration." Pl.'s Mem., ECF No. 13-1 at 37. The PowerPoint
presentation itself lacks critical information, such as the

author and the date of creation. *Id.*; *see also* Def.'s Ex. 5, ECF No. 11 at 1-20. "Without the accounts of harassment from the [principal investigators and researchers], the declaration's justification for withholding the [principal investigators' names] is reduced to speculation and summary accounts of the hearsay." *Humane Soc'y of United States*, 386 F. Supp. 3d at 45.

In holding that an agency "fairly asserted abortion-related violence as a privacy interest for both the names and addresses of persons and businesses associated with mifepristone," the D.C. Circuit relied on: (1) "supporting affidavits detail[ing] evidence of abortion clinic bombings"; and (2) descriptions of "websites that encourage[d] readers to look for mifepristone's manufacturing locations and then kill or kidnap employees once found." *Judicial Watch, Inc. v. FDA*, 449 F.3d at 153. In this case, however, the VA has failed to provide declarations or affidavits from the principal investigators and other research personnel attesting to the alleged harassment, annoyance, and embarrassment to support the VA's invocation of Exemption 6. *See Humane Soc'y of United States*, 386 F. Supp. 3d at 45 (finding that the agency's declaration to support its withholding of the requested information was "reduced to speculation and summary accounts of the hearsay" in the absence of first-hand accounts from the employees who were allegedly subjected to harassment). The Court therefore finds that the VA has failed to demonstrate

that there are substantial privacy interests in the principal

investigators' names.[10]

Nonetheless, the D.C. Circuit has instructed that the issue

of whether disclosure would compromise a substantial, as opposed

to a *de minimis*, privacy interest "is not very demanding." *Multi*

*Ag Media LLC*, 515 F.3d at 1230. The D.C. Circuit has balanced

the privacy interest against the public interest even where an

agency, as here, "established only the speculative potential of

a privacy invasion without any degree of likelihood." *Norton*,

309 F.3d at 37. Given that the "standard at this stage is not

very demanding," the D.C. Circuit explained that it was "willing

to engage in the balancing inquiry by concluding that disclosure

of the information would constitute a 'more than minimal

invasion[] of personal privacy.'" *Multi Ag Media LLC*, 515 F.3d

at 1230 (quoting *Norton*, 309 F.3d at 35).

### b. The Public Interest in Disclosure Outweighs the Asserted Privacy Interests

"[T]he only relevant 'public interest in disclosure' to be

---

[10] Having found that the VA has failed to carry its burden of
demonstrating substantial privacy interests in the principal
investigators' names to justify the non-disclosure under
Exemption 6, the Court need not reach WCW's other arguments—that
federal researchers do not have privacy interests because:
(1) the names are made available to the public under 5 C.F.R.
§ 293.311; (2) the VA's website lists the principal
investigators; and (3) academic journals and publications
contain the names of the principal investigators. *See* Pl.'s
Mem., ECF No. 13-1 at 27-31.

weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 487 (1994) (quoting *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989)). "In other words, disclosure of government records under FOIA is meant to help the public stay informed about 'what their government is up to.'" *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review* ("*AILA*"), 830 F.3d 667, 674 (D.C. Cir. 2016) (quoting *Reporters Comm.*, 489 U.S. at 773).

Given FOIA's strong presumption in favor of disclosure, the public interest in disclosure militates strongly in favor of disclosure of the names of the principal investigators in this case. WCW argues—and the Court agrees—that the disclosure of "the principal investigators' names would help hold individual investigators and the VA accountable for their conduct, encourage the investigators' compliance with the animal research protocols, and allow the public and WCW [to] evaluate the [VA's] compliance and responses to the public and Congressional concern surrounding the facility's dog experiments." Pl.'s Mem., ECF No. 13-1 at 31. The VA, however, fails to acknowledge the public interest in the release of the names of the principal investigators, arguing that "the disclosure of the identities

and personal information" of the principal investigators "is simply not relevant to the public's understanding of how [the] VA conducts its business." Def.'s Mem., ECF No. 10-1 at 10-11.

Contrary to the VA's assertion that there is no public interest here, *see id.*, the experiments at McGuire VAMC have garnered extensive media coverage about the canine research, *see, e.g.*, Pl.'s SOMF, ECF No. 13-2 at 12 ¶ 32 ("More than fifty new stories have been published detailing the controversy over McGuire VAMC's dog experiments."); Pl.'s Mem., ECF No. 13-1 at 32 ("The Richmond-area ABC affiliate WRIC, for one example, aired more than 25 segments related to the McGuire VAMC dog experiments in the past eight months."). It is undisputed that federal and state lawmakers have demanded accountability and transparency in government-funded animal experimentation. Pl.'s SOMF, ECF No. 13-2 at 11-12 ¶¶ 28-31. The PUPPERS Act of 2017 was introduced in Congress to prohibit the VA's research from causing significant pain or distress to dogs. *See id.* at 11 ¶ 29. And Congress unanimously passed an amendment to defund the VA's dog experiments in fiscal year 2018. *Id.* at 11 ¶ 30.

Furthermore, an incident report revealed that one of the researchers conducting a McGuire VAMC dog experiment "showed 'reckless behavior' and 'lack of foresight' after cutting open a dog's lung during a heart surgery." *Id.* at 9 ¶ 20 (quoting Goodman Decl., Ex. A, ECF No. 13-3 at 24). The VA does not

dispute the information contained in the incident report. *See id.*; *see also* Def.'s Reply, ECF No. 16 at 1-12. Neither does the VA challenge that "the McGuire VAMC IACUC warned the facility that future AWA violations could result in suspension or terminations of [Dr.] Tan's animal protocol." Pl.'s SOMF, ECF No. 13-2 at 10 ¶ 21; *see also* Def.'s Reply, ECF No. 16 at 1-12.

The Court concludes that information about the experiments and the principal investigators' compliance and non-compliance with the animal research protocols and applicable federal regulations clearly fall under the ambit of information that "let[s] citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (citation omitted). And disclosure of the names of the principal investigators will ensure that the "public stay[s] informed about 'what their government is up to.'" *AILA*, 830 F.3d at 674 (citation omitted). On balance, the public interest outweighs the asserted privacy interests of the principal investigators. The Court therefore finds that the release of the names would not "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Accordingly, the Court **DENIES** the VA's motion for summary judgment, and **GRANTS** WCW's cross-motion for summary judgment as to Exemption 6.[11]

---

[11] Because WCW is entitled to summary judgment as to Exemption 6, the Court **FINDS AS MOOT** WCW's requests for *in camera* review and

**C. The VA Properly Withheld the Title of ACORP # 02235
Under Exemption 3**

Finally, WCW challenges the VA's invocation of Exemption 3
to redact the title of ACORP # 02235. Pl.'s Mem., ECF No. 13-1
at 51. A "statute fits within Exemption 3 if . . . it either
'(i) requires that . . . matters be withheld from the public in
such a manner as to leave no discretion on the issue' or
'(ii) establishes particular criteria for withholding or refers
to particular types of matters to be withheld.'" *Labow v. DOJ*,
831 F.3d 523, 527 (D.C. Cir. 2016) (quoting 5 U.S.C. §
552(b)(3)(A)(i)–(ii)). Here, the VA invokes two withholding
statutes pursuant to Exemption 3: (1) 35 U.S.C. § 205, which
protects confidential information related to patents; and
(2) 15 U.S.C. § 3710a, which protects confidential information
within cooperative research and development agreements. *E.g.*,
Def.'s Mem., ECF No. 10-1 at 13; Def.'s Reply, ECF No. 16 at 11.
The Court analyzes, in turn, both statutes.

Section 205 provides:

> Federal agencies are authorized to withhold
> from disclosure to the public information
> disclosing any invention in which the Federal
> Government owns or may own a right, title, or
> interest (including a nonexclusive license)
> for a reasonable time in order for a patent
> application to be filed. Furthermore, Federal

_____

the production of the first page of each protocol at issue with
the principal investigators' names to determine whether the
identities of the principal investigators are in the public
domain. *See* Pl.'s Mem., ECF No. 13-1 at 45-46.

> agencies shall not be required to release
> copies of any document which is part of an
> application for patent filed with the United
> States Patent and Trademark Office or with any
> foreign patent office.

35 U.S.C. § 205. The parties agree that 35 U.S.C. § 205 is a
qualifying statute under Exemption 3. *See, e.g.*, Def.'s Mem.,
ECF No. 10-1 at 13; Pl.'s Mem., ECF No. 13-1 at 51. According to
the VA, "ACORP # 02235 contains information that is confidential
and privileged, trade secret information, as well as information
that is pending patent." Def.'s Mem., ECF No. 10-1 at 13.

WCW attacks the VA's reliance on 35 U.S.C. § 205 to
withhold the title of ACORP # 02235 on two grounds: (1) "[t]he
title of a protocol is not the type of information that . . .
would 'disclose the invention' under section 205, especially as
compared to all of the material about the process and research
itself that is left unredacted in ACROP # 02235," Pl.'s Mem.,
ECF No. 13-1 at 51-52; and (2) the VA "asserts that the patent
is already pending" and "[b]ecause the patent application, by
the agency's own account, has already been filed, section 205
does not protect the information," *id*. at 52.

Without addressing WCW's arguments, *see* Def.'s Reply, ECF
No. 16 at 11, the VA relies on the Fuemmeler declaration, which
states, in general terms, that "ACROP # 02235 contains
information that is confidential and privileged, trade secret
information, as well as information that is pending patent."

39

Fuemmeler Decl., ECF No. 10-5 at 4 ¶ 14. The VA contends that the agency "properly exercised its discretion to withhold the protocol title of ACROP # 02235." Def.'s Reply, ECF No. 16 at 11. The VA, however, falls short of providing a "relatively detailed justification, specifically identifying the reasons why" Exemption 3 applies to the information purportedly covered under Section 205. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

WCW correctly points out that "the text of 35 U.S.C. § 205 makes clear that it protects information 'for a reasonable time in order for a patent application to be filed,'" but the VA does not deny that "it has already filed its patent application." Pl.'s Reply, ECF No. 17 at 20; *see also* Def.'s Reply, ECF No. 16 at 10-11. Section 205 covers information prior to the filing of a patent application for a reasonable time, 35 U.S.C. § 205, but the patent has already been filed because the VA's declarant avers that the patent is pending. Fuemmeler Decl., ECF No. 10-5 at 4 ¶ 14. The VA fails to demonstrate that Section 205 applies to the title of ACROP # 02235. *See* Def.'s Reply, ECF No. 16 at 10-11. The Court therefore finds that the VA has not met its burden of demonstrating that the title of ACROP # 02235 is exempt from disclosure under 35 U.S.C. § 205.

Having found that the VA failed to demonstrate that the information in the title of ACROP # 02235 is protected under

40

Section 205, the Court turns to the VA's invocation of the FTTA. The FTTA provides:

> No trade secrets or commercial or financial information that is privileged or confidential, under the meaning of section 552(b)(4) of Title 5, which is obtained in the conduct of research or as a result of activities under this chapter from a non-Federal party participating in a cooperative research and development agreement shall be disclosed.

15 U.S.C. § 3710a(c)(7)(A).

In this case, WCW does not dispute that the FTTA satisfies the withholding criteria under Exemption 3. *See* Pl.'s Mem., ECF No. 13-1 at 52; *see also* Pl.'s Reply, ECF No. 17 at 20. But WCW argues that the VA waived any arguments based on the FTTA because the VA did not raise that statute in its opening brief. *See* Pl.'s Mem., ECF No. 13-1 at 52; *see also* Pl.'s Reply, ECF No. 17 at 20. Although WCW is correct that the VA raised the FTTA for the first time in its reply brief as a basis for withholding the title of ACROP # 02235, the VA asserted the FTTA to withhold information in the Fuemmeler declaration and the *Vaughn* index, *see, e.g.*, Fuemmeler Decl., ECF No. 10-5 at 4-5 ¶ 14; Def.'s Ex. 1, ECF No. 10-3 at 4. The Court finds that the VA did not waive any arguments based on the FTTA because WCW had an opportunity to respond to the VA's arguments in its reply brief. *See Rosenberg v. United States Dep't of Immigration & Customs Enf't*, 13 F. Supp. 3d 92, 115-116 (D.D.C. 2014) (finding that

the agency's late invocation of Exemption 3 in its reply brief did not waive raising the exemption where the FOIA requester had an opportunity to respond in its opposition brief to the agency's motion for reconsideration).

Apart from its waiver argument, WCW has adduced no argument as to the applicability of the FTTA under Exemption 3. *See* Pl.'s Mem., ECF No. 13-1 at 52; *see also* Pl.'s Reply, ECF No. 17 at 20. "[T]he Court still has an independent duty to 'determine for itself whether the record and any undisputed material facts justify granting summary judgment,' because a Court may not grant summary judgment simply because the withholding [under a particular exemption] was not challenged." *Tokar v. DOJ*, 304 F. Supp. 3d 81, 94 n.3 (D.D.C. 2018) (quoting *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)).

The VA argues—and the Court agrees—that Section 3710a(c)(7)(A) gives the agency "no discretion to release any commercial and confidential information obtained from the [cooperative research and development agreement's] private sector partner." Def.'s Reply, ECF No. 16 at 11. According to the VA's declarant, "[t]here is a cooperative research and development agreement . . . in place for [ACROP # 02235]." Fuemmeler Decl., ECF No. 10-5 at 5 ¶ 14. And the VA's declarant avers that "release of [the title of ACROP # 02235] would reveal a new and innovative process to treating a disease." *Id*. Such

information cannot be disclosed under the FTTA. *See* 15 U.S.C. § 3710a(c)(7)(A). The VA's declaration supports its invocation of the FTTA as the exempting statute to withhold the title of the ACROP # 02235. The Court therefore finds that the VA appropriately redacted the information at issue pursuant to Exemption 3. Accordingly, the Court **GRANTS** the VA's motion for summary judgment, and **DENIES** WCW's cross-motion for summary judgment as to Exemption 3.

## V.    Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the VA's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** WCW's Cross-Motion for Summary Judgment. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **March 10, 2020**